UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>HEZZACK DANIELS,<br><br>　　　　Defendant. | Case No. 13-cr-00523-WHO<br><br>**ORDER DENYING MOTION TO DISMISS INDICTMENT**<br><br>Re: Dkt. No. 68 |

## INTRODUCTION

Defendant Hezzack Daniels moves to dismiss his indictment for violation of 18 U.S.C. § 922(g)(1), known as the felon-in-possession law, on the grounds that, as applied to him, the law violates his Second Amendment right to bear arms.[1] Daniels's underlying felony, since dismissed, is 18 years old and was for non-violent simple drug possession that is now treated as a misdemeanor. Nonetheless, assuming that Daniels maintains some Second Amendment protections notwithstanding his felony conviction, § 922(g)(1) satisfies means-end scrutiny as applied to him and is therefore constitutional. His Equal Protection challenge fails for the same reason. His Tenth Amendment argument is meritless because § 922(g)(1) constitutionally regulates felons' possession of firearms by virtue of the commerce clause, without violating the Tenth Amendment. Daniels's motion to dismiss is DENIED.

---

[1] § 922(g)(1) provides that "[i]t shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1).

**BACKGROUND**

Daniels was convicted of a felony in 1997 for possession of methaqualone, a controlled substance also known by its brand name, Quaalude. As a result, § 922(g)(1) prohibited him from possessing any firearms. On June 3, 2013, a search of Daniels's home found a Norinco brand, Mac 90 model, AK-47 style, machine gun, an SKS model, semi-automatic rifle, and a Beretta brand, 9 millimeter caliber, semi-automatic pistol, all of which the government alleges Daniels knowingly possessed. Dkt. No. 1 ¶ 1.

Daniels's 1997 conviction was expunged on November 15, 2013, pursuant to California Penal Code section 1203.4. Dkt. No. 68-1. Daniels contends that possession of methaqualone may now only be prosecuted as a misdemeanor, following California voters' passage of Proposition 47 in 2014.[2]

Daniels moves to dismiss the indictment under Federal Rules of Criminal Procedure 12(b)(2) and 12(b)(3), arguing that § 922(g)(1), as applied to him, unconstitutionally burdens his Second Amendment right to bear arms. Dkt. No. 68. Daniels also argues that § 922(g)(1) violates his Fifth Amendment right to equal protection of the laws and the Tenth Amendment's reservation to the states of powers not delegated to the United States, including the power to prohibit a person's purely intrastate possession of firearms. After oral argument on March 12, 2015, I ordered supplemental briefing, which was complete on March 30, 2015. Dkt. Nos. 79-82.

**DISCUSSION**

**I.  SECOND AMENDMENT CHALLENGE**

Daniels's Second Amendment challenge is fueled by *D.C. v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 791 (2010), in which the Supreme Court held that the Second Amendment confers an individual fundamental right to bear arms (as opposed to a collective right which may only be exercised through participation in some collective body, like a militia). Daniels argues that under *Heller* and *McDonald*, § 922(g)(1) is unconstitutional as

---

[2] The government does not dispute that possession of methaqualone may now only be prosecuted as a misdemeanor. Because it makes no difference to my analysis, I assume that that is the case.

applied to him because there is an insufficient link between the government's interest in preventing crime and the permanent abrogation of his fundamental individual right to bear arms.

### A. Legal standard and relevant case law

#### 1. *Heller*

In *Heller,* the Court held that the Second Amendment confers an individual right to bear arms and struck down District of Columbia laws banning handgun possession in the home and requiring all firearms in homes to be unloaded and disassembled or "bound by a trigger lock or similar device." *Heller*, 554 U.S. at 630, 635. However, the Court recognized that "the right secured by the Second Amendment is not unlimited," and suggested that the "core protection" of the Second Amendment is the "right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id*. at 626, 634-35.

While declining to "undertake an exhaustive historical analysis today of the full scope of the Second Amendment," the *Heller* Court stated that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id*. at 626-27. The Court referred to those regulatory measures as "presumptively lawful." *Id*. at 627 n.26. The Court also instructed that the Second Amendment does not protect "weapons not typically possessed by law-abiding citizens for lawful purposes." *Id.* at 625; *see also id.* at 627 ("the sorts of weapons protected were those 'in common use at the time'" of the enactment of the Second Amendment) (citing *United States v. Miller*, 307 U.S. 174, 179 (1939)).

#### 2. Challenges to firearms regulations in the Ninth Circuit after *Heller*

The Ninth Circuit rejected a challenge to § 922(g)(1) in *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010), which is the only published decision from the Ninth Circuit that directly addresses the constitutionality of § 922(g)(1) following *Heller*. The defendant there had three prior, non-violent felony convictions: two for car burglary and one for drug possession. *Id*. at 1114. The Ninth Circuit rejected the defendant's argument that *Heller* rendered § 922(g)(1) unconstitutional. The court stated that *Heller*'s observation that "prohibitions on the possession of

3

firearms by felons" was among "presumptively lawful regulatory measures" meant that "felons are categorically different from the individuals who have a fundamental right to bear arms." *Id*. at 1115 (citing *Heller*, 554 U.S. at 527 n.26). The court rejected Vongxay's argument that this language from *Heller* was dicta and not controlling. *Id.* ("Vongxay nevertheless contends that the Court's language about certain long-standing restrictions on gun possession is dicta, and therefore not binding. We disagree. Courts often limit the scope of their holdings, and such limitations are integral to those holdings.").

Having determined that "*Heller* does not render § 922(g)(1) unconstitutional," the *Vongxay* court next considered the impact of other case law on the constitutionality of § 922(g)(1). It determined that its pre-*Heller* decision in *United States v. Younger,* 398 F.3d 1179 (9th Cir. 2005) was controlling and dispositive of Vongxay's constitutional challenge. *Vongxay*, 594 F.3d at 1116 ("our legal inquiry ends with *Younger*"). In *Younger*, the Ninth Circuit denied a Second Amendment challenge to § 922(g)(1). *Younger*, 398 F.3d at 1192. As the Ninth Circuit recognized in *Vongxay*, it "performed only minimal analysis" of the Second Amendment claim in *Younger*. *Vongxay*, 594 F.3d at 1116. The court provided some more of that context in *Vongxay*, stating that it "declined [in *Younger*] to make a distinction between violent and non-violent felons and held that § 922(g)(1), which prohibits all felons from possessing firearms, was constitutional." *Vongxay*, 594 at 1116.

The following year, the Ninth Circuit rejected a challenge to § 922(g)(3), which prohibits users of illegal drugs from shipping firearms in interstate commerce, in *United States v. Dugan*, 657 F.3d 998 (9th Cir. 2011). The Ninth Circuit held that § 922(g)(3) prohibited conduct similar to the longstanding prohibitions discussed in *Heller*, i.e., "the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms," and was therefore permissible. *Id*. at 999 (citing *Heller*, 554 U.S. at 626-27). The court explained that "we see the same amount of danger in allowing habitual drug users to traffic in firearms as we see in allowing felons and mentally ill people to do so. Habitual drug users, like career criminals and the mentally ill, more likely will have difficulty exercising self-control,

4

particularly when they are under the influence of controlled substances." *Id*.

Three years after *Vongxay*, the Ninth Circuit adopted a two-step inquiry to assess post-*Heller* Second Amendment challenges in *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013) (citations omitted) *cert. denied,* 135 S. Ct. 187 (2014). It instructed that the inquiry "(1) asks whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny." *Id*. at 1136 (citing *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010); *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010)). The court stated that "this two-step inquiry reflects the Supreme Court's holding in *Heller* that, while the Second Amendment protects an individual right to keep and bear arms, the scope of that right is not unlimited." *Id*. (citing *Heller*, 554 U.S. at 626-27).

*Chovan* involved facial and as-applied challenges to § 922(g)(9), which prohibits possession of firearms by domestic violence misdemeanants. Chovan argued that § 922(g)(1) was unconstitutional as applied to him because his domestic violence conviction occurred 15 years before his § 922(g)(9) conviction, he was unlikely to recidivate, and he had been law-abiding for those fifteen years. *Id*. at 1141. Applying the two-step inquiry, the Ninth Circuit first determined that § 922(g)(9) burdens rights protected by the Second Amendment because the government had not proved that domestic violence misdemeanants had historically been restricted from bearing arms. *Id*. at 1137. But the court found that the regulation did not burden the core of the Second Amendment right because Chovan was not a law-abiding, responsible citizen, by virtue of his domestic violence record. *Id*. at 1138. The court determined that intermediate scrutiny applied because, while § 922(g)(9) did not implicate Chovan's core Second Amendment, it did place a "quite substantial" burden on his Second Amendment right. *Id*. Applying intermediate scrutiny, the court rejected Chovan's facial and as-applied challenges, holding that § 922(g)(9) was "substantially related to the government's important interest of preventing domestic gun violence." *Id*. at 1142. The Ninth Circuit also noted that, even assuming that Chovan had no history of domestic violence since his domestic violence conviction 15 years earlier, he had not proved that an abuser in those circumstances "is highly unlikely to [commit domestic violence] again." *Id*.

In *Van Der Hule v. Holder*, 759 F.3d 1043, 1051 (9th Cir. 2014), the Ninth Circuit held

that § 922(g)(1) applied to sexual assault felon even though he had had some of his civil rights restored under Montana law. The majority of the opinion addressed whether the civil rights restoration at issue brought the felon outside of the scope of § 922(g)(1). However, the court also briefly addressed the alternative argument that § 922(g)(1) should be analyzed under strict scrutiny and that it unconstitutionally burdened his Second Amendment right to keep and bear arms for personal protection. *Id*. at 1050. The court rejected the argument, stating that "[m]ost recently, in [*Chovan*], we made it explicit that Second Amendment questions are reviewed under heightened scrutiny, and upheld, under intermediate scrutiny, a subsection of § 922(g) that barred firearm possession by anyone who has been convicted in any court of a misdemeanor crime of domestic violence. *Id*. at 1050-51 (citing *Chovan*, 735 F.3d at 1140-41). The court concluded that "In light of *Chovan* and *Vongxay,* we believe that § 922(g)(1) continues to pass constitutional muster." *Id*. at 1051.

Most recently, in *Fyock v. Sunnyvale*, 779 F.3d 991 (9th Cir. 2015), the Ninth Circuit reviewed a denial of a motion to preliminarily enjoin a city ordinance restricting the possession of large-capacity magazines. Applying the two-step test, the court first affirmed the district court's finding that large-capacity magazines did not constitute "dangerous and unusual weapons," which *Heller* identified as outside the scope of the Second Amendment.[3] *Id*. at 997. The court then concluded that intermediate scrutiny was appropriate because the regulation at issue may implicate the core of the Second Amendment, but the burden was not severe. *Id*. at 999. The court upheld the district court's finding that the regulation satisfied intermediate scrutiny, based on evidence that the use of large-capacity magazines results in more gunshot wounds per victim, increases the lethality of gunshot injuries, are disproportionately used in mass shootings and in crimes against law enforcement, and hat a reduction in the number of large-capacity magazines in circulation may decrease the use of such magazines in gun crimes. *Id*. at 1000.

---

[3] The parties in *Fyock* did not provide evidence regarding the historical prevalence and regulation of large-capacity magazines. The court therefore did not analyze whether the regulation resembled prohibitions historically exempted from the Second Amendment. *Id*. at 997

### 3. As-applied challenges to § 922(g)(1) in other circuits after *Heller*

The Fourth Circuit has articulated a streamlined version of the two-step analysis where the challenged regulation is one of the presumptively lawful firearms restrictions identified in *Heller*, such as § 922(g)(1). *See United States v. Moore*, 666 F.3d 313, 318 (4th Cir. 2012) ("the [two-step] analysis is more streamlined when a presumptively lawful regulatory measure is under review"). Under that streamlined analysis, "a presumptively lawful regulation could not violate the Second Amendment unless, as applied, it proscribed conduct falling within the category of law-abiding responsible citizens using arms in defense of hearth and home." *United States v. Pruess*, 703 F.3d 242, 245-46 (4th Cir. 2012) (internal punctuation omitted) (citing *Moore*, 666 F.3d at 319; *Heller,* 554 U.S. at 635).

In *Pruess*, the defendant argued that § 922(g)(1) was unconstitutional as applied to him because he was a non-violent felon. *Id*. at 245. The Fourth Circuit denied the as-applied challenge, explaining that "Pruess' repeated violations of the firearms laws, leading to at least twenty prior convictions, make clear he is hardly 'law-abiding' and 'responsible.'" *Id*. at 246. The court further held that the weapons which led to his arrest under § 922(g)(1), which included "belted ammunition appropriate for use in machine guns," were outside the scope of the Second Amendment because they could not "be intended, in any substantial part, for 'defense of hearth and home.'" *Id*. Similarly, in *Moore*, the Fourth Circuit held that § 922(g)(1) was not unconstitutional as applied to the defendant because his "three prior felony convictions for common law robbery and two prior convictions for assault with a deadly weapon on a government official clearly demonstrate that he is far from a law-abiding, responsible citizen." 666 F.3d at 319-320.

Other circuits have likewise rejected as-applied challenges to § 922(g)(1) with streamlined analyses on the grounds that the defendant is not a law-abiding, responsible citizen. In *United States v. Torres-Rosario*, 658 F.3d 110, 113 (1st Cir. 2011), the Eleventh Circuit denied an as-applied challenge by a non-violent felon, explaining that two of the defendant's prior convictions were for distribution and possession with intent to distribute controlled substances and "drug dealing is notoriously linked to violence." The court stated that "[a]ssuming *arguendo* that the

7

Supreme Court might find some felonies so tame and technical as to be insufficient to justify the ban, drug dealing is not likely to be among them." *Id*. Similarly, in *United States v. Barton*, 633 F.3d 168, 174 (3d Cir. 2011), the Third Circuit denied an as-applied challenge to § 922(g)(1), explaining that the defendant's predicate offenses for drug trafficking and receiving stolen weapons precluded him from "distinguish[ing] his circumstances from those of persons historically barred from Second Amendment protections." In *United States v. Woolsey*, the Eight Circuit denied an as-applied challenge to § 922(g)(1) on the grounds that the defendant, who had one prior felony conviction for aggravated assault and two prior felony convictions for resisting arrest, had not shown that he was "no more dangerous than a typical law-abiding citizen." 759 F.3d 905, 909 (8th Cir. 2014) (citation omitted).

Daniels cites only one case, *Binderup v. Holder,* 2014 WL 4764424 (E.D. Pa., Sept. 25, 2014), where a court has granted an as-applied Second Amendment challenge to § 922(g)(1). The movant in that case, Binderup, had a 16-year-old conviction for misdemeanor corruption of minors, which was punishable by up to five years under Pennsylvania law, triggering § 922(g)(1). Following that conviction, Binderup sold the firearms he owned to a licensed dealer and he had not been convicted, arrested or charged with any offenses since. *Id*. at *22. Binderup did not possess firearms while subject to § 922(g)(1). Rather, he brought a civil rights action, seeking a declaration that the law, as applied to him, violated the Second Amendment. *Id*. at *1. The court granted the as-applied challenge, explaining that Binderup "distinguishes himself from those individuals traditionally disarmed as the result of prior criminal conduct and demonstrates that he poses no greater threat of future violent criminal activity than the average law-abiding citizen." *Id*.

**B. Analysis**

A key dispute in this matter is whether Daniels has any Second Amendment rights. Daniels contends that he does because his felony conviction for methaqualone possession would not historically have resulted in the loss of his right to bear arms and, consequently, § 922(g)(1), as applied to him, must pass intermediate scrutiny. In contrast, the government argues that only rational basis review applies because Daniels does not have any Second Amendment rights as he

8

is a felon, irrespective of the nature of his underlying felony. The government's argument is simple: Daniels is a felon; the Supreme Court expressly stated that *Heller* did not "cast doubt on longstanding prohibitions on the possession of firearms by felons;" the individual Second Amendment right articulated in *Heller* therefore does not apply to felons; and § 922(g)(1) is therefore constitutional as applied to Daniels. *See* Dkt. No. 79 at 3-4.

In light of the development of the case law discussed in the preceding section, the analysis is not as simple as the government suggests. The government assumes that § 922(g)(1) as applied to Daniels does not burden the Second Amendment and wholly skips any analysis of whether felons convicted of drug possession were historically unprotected by the Second Amendment.[4] The Ninth Circuit recently "discouraged bypassing the historical analysis step and assuming without deciding that conduct burdens the Second Amendment." *Fyock,* 779 F.3d at 997; *see also Peruta v. Cnty. of San Diego*, 742 F.3d 1144, 1167 (9th Cir. 2014) ("The traditional restrictions [on the keeping and bearing of arms] go to show the scope of the right. Tracing the scope of the right is a necessary first step in the constitutionality analysis-and sometimes it is the dispositive one.") (citing *Heller,* 554 U.S. at 603, 605, 628-35).

By ignoring the historical Second Amendment implications of Daniels's underlying felony, the government in effect disregards Daniels's as-applied challenge and treats § 922(g)(1) as an irrefutably lawful regulation in all situations, contrary to the Supreme Court's instruction that a prohibition on felon possession is "*presumptively* lawful." *Heller*, 554 U.S. at 627 n.26 (emphasis added). The Ninth Circuit has not directly addressed whether the presumptive constitutionality of § 922(g)(1) can be rebutted in an as-applied challenge, but other circuits have recognized that it can. *See, e.g. Barton*, 633 F.3d at 173 ("By describing the felon disarmament ban as 'presumptively' lawful, the Supreme Court implied that the presumption may be rebutted.") (citation omitted); *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010) ("*Heller* referred

---

[4] In addition, unlike the streamlined analyses of as-applied challenges to § 922(g)(1) discussed in the previous section, here the government does not directly address whether, as applied to Daniels, § 922(g)(1) proscribes conduct falling within the category of law-abiding responsible citizens using arms in defense of hearth and home. As discussed below, it is clear from the record that it does not.

to felon disarmament bans only as "presumptively lawful," which, by implication, means that there must exist the possibility that the ban could be unconstitutional in the face of an as-applied challenge."); *Schrader v. Holder*, 704 F.3d 980, 991 (D.C. Cir.) *cert. denied,* 134 S. Ct. 512 (2013) (had as-applied challenge to § 922(g)(1) been raised, court "would hesitate to find Schrader outside the class of 'law-abiding, responsible citizens' whose possession of firearms is, under *Heller,* protected by the Second Amendment" because "Schrader's offense occurred over forty years ago and involved only a fistfight").

I need not determine whether the presumptive constitutionality of § 922(g)(1) can be rebutted in an as-applied challenge because, even assuming that it can, Daniels has failed to do so here. Applying the two-step test, I conclude that even if § 922(g)(1), as applied to Daniels, burdens conduct within the scope of the Second Amendment, it satisfies means-end scrutiny and is therefore constitutional as applied to Daniels.

### 1. Applying the Ninth Circuit's two-step test

As discussed above, the Ninth Circuit applies a two-step inquiry to analyze post-*Heller* Second Amendment challenges. The inquiry "(1) asks whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny." *Chovan*, 735 F.3d at 1136 (citations omitted); *see also Fyock*, 779 F.3d at 996 ("To evaluate post-*Heller* Second Amendment claims, the Ninth Circuit, consistent with the majority of our sister circuits, employs a two-prong test: (1) the court 'asks whether the challenged law burdens conduct protected by the Second Amendment'; and (2) if so, what level of scrutiny should be applied.") (citing *Chovan,* 735 F.3d at 1136). The government does not apply the two-step test here, presumably because it is the government's position that the test only applies where the challenged regulations were not identified as presumptively lawful by the Supreme Court in *Heller*. But the Ninth Circuit has not limited the use of the two-step test in that way. On the contrary, the Ninth Circuit has broadly endorsed the use of the two-step test in Second Amendment challenges. *See, e.g., id.*; *Chovan*, 735 F.3d at 1136; *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014); *Peruta v. Cnty. of San Diego*, 742 F.3d 1144, 1150 (9th Cir. 2014).

The two-step inquiry provides an appropriate framework for addressing all Second Amendment challenges to firearms regulations, whether or not the regulations at issue were identified in *Heller* as presumptively lawful. *See, e.g., Pena v. Lindley*, 2015 WL 854684, at *13 (E.D. Cal. Feb. 26, 2015) (applying two-step test to regulation prohibiting manufacture and sale of handguns that do not meet certain requirements, which the court identified as "one of the 'presumptively lawful regulatory measures' identified in *Heller*"). If the challenged regulation does not regulate conduct within the scope of the Second Amendment, as the government argues is the case here, the answer at the first step is no and there is no Second Amendment violation.[5]

### 2. Step One: does § 922(g)(1), as applied to Daniels, burden conduct protected by the Second Amendment?

At the first step, I ask whether § 922(g)(1), as applied to Daniels, burdens conduct protected by the Second Amendment. In considering an as-applied challenge to § 922(g)(9) in *Chovan*, the Ninth Circuit looked to historical evidence in the record to determine whether the Second Amendment, as historically understood, would have applied to the defendant, a domestic violence misdemeanant. 735 F.3d at 1137. The court concluded that the government failed to establish that "domestic violence misdemeanants in particular have historically been restricted from bearing arms." *Id*. The court noted that the Federal Firearms Act of 1938 "only restricted firearm possession for those individuals convicted of a 'crime of violence,'" and that domestic violence misdemeanants who, like the defendant, were convicted of simple misdemeanor assault, would not be restricted from possessing firearms until 1996, with the passage of the Lautenberg Amendment to the Gun Control Act of 1968. *Id*. Given the lack of historical evidence in the record, the Ninth Circuit was unable to conclude that the Second Amendment, "as historically understood," did not apply to the defendant and the court was required to assume that "Chovan's Second Amendment rights are intact and that he is entitled to some measure of Second

---

[5] As discussed above, it may be appropriate to apply a streamlined version of the two-step test where the regulation at issue is one of the presumptively regulations identified in *Heller*, such as § 922(g))(1). The streamlined inquiry asks whether the presumptively lawful regulation, as applied, proscribes conduct falling within the category of law-abiding responsible citizens using arms in defense of hearth and home. *See, e.g., Pruess*, 703 F.3d at 245-46; *Moore*, 666 F.3d at 319-20; *see also Torres-Rosario*, 658 F.3d at 113; *Barton*, 633 F.3d at 174; *Woolsey*, 759 F.3d at 909.

Amendment protection to keep and possess firearms in his home for self-defense." *Id*. (citation omitted).

The government here has not provided any evidence suggesting that the Second Amendment, as historically understood, would not have applied to Daniels. The government instead relies on the Ninth Circuit's statement in *Vongxay* that "felons are categorically different from the individuals who have a fundamental right to bear arms." Dkt. No. 70 at 2 (citing *Vongxay*, 594 F.3d at 1115). Felons *are* different: there is a presumption that they lack Second Amendment rights. *See Heller*, 554 U.S. at 527 n.26. But, as noted above, that is not the end of the inquiry. If it were, there would be no way to rebut the presumption. Moreover, *Vongxay* was one of the first Second Amendment challenges to reach the Ninth Circuit after *Heller*. The Ninth Circuit has significantly refined its framework for analyzing Second Amendment challenges since then, including adopting the two-step test in *Chovan* and instructing in *Fyock* and *Peruta* not to bypass the historical analyses and assume that conduct burdens the Second Amendment.[6] *Fyock*, 779 F.3d at 997; *Peruta*, 742 F.3d at 1167.

As was the case in *Chovan*, given "the lack of historical evidence in the record before [me, I am] certainly not able to say that the Second Amendment, as historically understood, did not apply to persons convicted of [methaqualone possession. I] must assume, therefore, that [Daniel]'s Second Amendment rights are intact and that he is entitled to some measure of Second Amendment protection to keep and possess firearms in his home for self-defense." *Chovan*, 735 F.3d at 1137.

**3. Step Two: Does § 922(g)(1), as applied to Daniels, satisfy means-end scrutiny?**

   a. <u>Intermediate scrutiny applies</u>

At the second step I ask whether § 922(g)(1), as applied to Daniels, satisfies an appropriate level of means-end scrutiny. "The level of scrutiny depends upon (1) how close the law comes to

---

[6] In any event, for the reasons stated below, 922(g)(1) satisfies means-end scrutiny as applied to Daniels, even assuming that he is entitled to some measure of Second Amendment protection. Accordingly, assuming that Daniels retains some Second Amendment rights leads to the same outcome as *Vongsay*: rejection of the Second Amendment challenge to § 922(g)(1).

the core of the Second Amendment right, and (2) the severity of the law's burden on the right." *Chovan*, 735 F.3d at 1138 (citation omitted). Intermediate scrutiny is appropriate if the regulation at issue does not implicate the core Second Amendment right *or* does not place a substantial burden on that right. *Fyock*, 779 F.3d at 998-99 (emphasis in original) (citing *Jackson,* 746 F.3d at 964).

*Heller* instructs that the core of the Second Amendment is "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Chovan*, 735 F.3d at 1138 (citing *Heller*, 554 U.S. at 635). Laws that restrict firearm possession by persons with criminal records therefore do not regulate the core of the Second Amendment. *See, e.g., id.* ("[Chovan's] claim is not within the core right identified in *Heller*—the right of a *law-abiding, responsible* citizen to possess and carry a weapon for self-defense—by virtue of [Chovan]'s criminal history as a domestic violence misdemeanant") (emphasis in original); *Chester*, 628 F.3d at 682-83 (same); *cf Jackson*, 746 F.3d at 963 ("section 4512 implicates the core because it applies to law-abiding citizens").

Daniels is not a "law-abiding, responsible citizen" given his underlying felony conviction for drug possession, for which he was sentenced to 60 days in jail.[7] Dkt. No. 68 at 2. Daniels was sentenced to an additional 60 days in jail for a probation violation. *Id*. at 2 n.1. In addition, he states that he has had an undefined numbers of "misdemeanor convictions since then," at least one of which led to two days in jail. Dkt. No. 68 at 12. Daniels does not describe the circumstances or charged conduct at issue in his probation violation or misdemeanor convictions, but it is clear that he is hardly a "law-abiding, responsible citizen."[8] Moreover, the government alleges that he

---

[7] It is immaterial that Daniels's conviction was later dismissed under state law. What matters is that Daniels was convicted of a felony and that he was subject to § 922(g)(1) at the time of his felon-in-possession arrest. *See, e.g., United States v. Ligon*, 2010 WL 4237970, at *6 (D. Nev. Oct. 20, 2010) ("[T]he reversal of defendant's underlying felony does not invalidate his felon in possession conviction. He was under a disability when he was found with firearms. Accordingly, this fact does not call into question the constitutionality of defendant's conviction.") *aff'd,* 461 F. App'x 582 (9th Cir. 2011).

[8] Consistent with its failure to address Daniels's as-applied challenge, the government does not address Daniels's criminal history, likely missing an opportunity to strengthen its argument that § 922(g)(1) is not unconstitutional as applied to Daniels.

13

unlawfully possessed a machine gun, a semi-automatic rifle, and a semi-automatic pistol.[9] Dkt. No. 1 ¶ 1. A machine gun is not used by law-abiding, responsible citizens for defense. *See, e.g., Heller*, 554 U.S. at 625 ("Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns"); *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008) ("Machine guns are not in common use by law-abiding citizens for lawful purposes.").[10]

Because Daniels is not a "law-abiding, responsible citizen," § 922(g)(1) does not burden the core of the Second Amendment as applied to him. *Chovan*, 735 F.3d at 1138; *Chester*, 628 F.3d at 682-83. However, the burden § 922(g)(1) places on Daniels's Second Amendment right is substantial because it amounts to a life-time ban. *See Chovan*, 735 F.3d at 1138 (life-time prohibition on domestic violence misdemeanant was "quite substantial" burden on Second Amendment right, even though it did not regulate core of Second Amendment). Intermediate scrutiny is therefore the proper standard to apply to Daniels's claim that § 922(g)(1) is unconstitutional as applied to him. *See id*. ("In sum, § 922(g)(9) does not implicate the core Second Amendment right, but it does place a substantial burden on the right. Accordingly, we conclude that intermediate rather than strict scrutiny is the proper standard to apply.").

b. Section 922(g)(1) satisfies intermediate scrutiny as applied to Daniels

To satisfy intermediate scrutiny, (1) the government's stated objective must be significant, substantial, or important; and (2) there must be a reasonable fit between the challenged regulation and the asserted objective. *Id*. at 1139; *Jackson*, 746 F.3d at 965. The government is not required

---

[9] Those allegations, though not proven, are appropriately considered in an as-applied challenge under Ninth Circuit precedent. *See Chovan*, 735 F.3d at 1141-42 (considering "unsubstantiated allegation" of domestic violence, which was not charged, because allegation was "part of the record" and was related to the rationale for the regulation at issue).

[10] Daniels's conduct since his felony conviction, including an unspecified probation violation, several misdemeanor convictions, and his alleged violation of § 922(g)(1) distinguishes him from the plaintiff who sought declaratory relief in *Binderup*. That plaintiff was not convicted, arrested or charged with any offenses since his disqualifying conviction and, rather than challenge § 922(g))(1) after being arrested for violating it, had filed an affirmative civil action to declare § 922(g)(1) unconstitutional as applied to him to allow him to purchase firearms. *Binderup*, 2014 WL 4764424, at *1.

1  to show that the regulation is the least restrictive means of achieving its interest; it need only show
2  that the regulation "promotes a substantial government interest that would be achieved less
3  effectively absent the regulation." *Fyock*, 779 F.3d at 1000 (citations omitted). The Ninth Circuit
4  instructs that "[w]hen reviewing the reasonable fit between the government's stated objective and
5  the regulation at issue, the court may consider 'the legislative history of the enactment as well as
6  studies in the record or cited in pertinent case law.'" *Id*. (citing *Jackson,* 746 F.3d at 966; *Chovan,*
7  735 F.3d at 1140).

8        Congress passed § 922(g)(1) to "keep guns out of the hands of those who have
9  demonstrated that they may not be trusted to possess a firearm without becoming a threat to
10 society." *Small v. United States*, 544 U.S. 385, 393-94 (2005) (citations omitted); *see also United*
11 *States v. Yancey*, 621 F.3d 681, 683 (7th Cir. 2010) ("Congress enacted the exclusions in § 922(g)
12 to keep guns out of the hands of presumptively risky people.") (citations omitted). There is no
13 question that preventing firearm violence is an important government interest; Daniels concedes as
14 much. *See* Dkt. No. 68 at 10 ("The government's general interest in preventing crime is legitimate
15 . . . ."). But he argues that "the government will be unable to show a substantial enough link
16 between the government's admittedly legitimate interest in preventing crime, and the wholesale,
17 permanent abrogation of Mr. Daniels' right to bear arms on the basis of an 18-year-old, dismissed
18 conviction that may now only be prosecuted as a misdemeanor." *Id*. at 12.

19       I disagree. Having engaged in what, at the time, constituted felony drug possession,
20 Daniels is within the category of persons which Congress could reasonably conclude is more
21 likely to abuse firearms. There is a "strong link between drug use and violence." *United States v.*
22 *Carter*, 750 F.3d 462, 467 (4th Cir. 2013) *cert. denied,* 135 S. Ct. 273 (2014); *see also Yancey*,
23 621 F.3d at 686 ("Ample academic research confirms the connection between drug use and violent
24 crime."). Like the defendant whose as-applied challenge was denied in *Chovan*, Daniels has not
25 presented evidence that a restricted person who has not been convicted for 18 years is no more
26 likely than the average, law-abiding, responsible citizen to misuse firearms. *Chovan*, 735 F.3d at
27 1142 ("Nor has [Chovan] directly proved that if a domestic abuser has not committed domestic
28 violence for fifteen years, that abuser is highly unlikely to do so again. In the absence of such

evidence, we conclude that the application of § 922(g)(9) to Chovan is substantially related to the government's important interest of preventing domestic gun violence."). § 922(g)(1), as applied to Daniels, is substantially related to the government's important interest of preventing gun violence and passes constitutional muster.

Daniels's conduct since his felony conviction, including an unspecified probation violation, several misdemeanor convictions, and his allegedly unlawful possession of a machine gun, a semi-automatic rifle, and a semi-automatic pistol, *see supra*, further demonstrates that he is among the category of persons which Congress could reasonably conclude are more likely to abuse firearms and that § 922(g)(1), as applied to him, is substantially related to the government's interest in reducing gun violence. *See Chovan,* 735 F.3d at 1142 ("In light of the domestic abuse call [which was not charged and occurred years after the underlying conviction], § 922(g)(9)'s application to Chovan is substantially related to the goal of reducing domestic gun violence."). In sum, Daniels has failed to establish that he is no more likely to abuse a firearm than the average, law-abiding citizen. His motion to dismiss the indictment on the basis that § 922(g)(1) violates the Second Amendment as applied to him is DENIED.

## II.  FIFTH AMENDMENT CHALLENGE

Daniels argues that § 922(g)(1) violates his right to Equal Protection because the exceptions based on pardons, expungement, or restoration of civil rights vary between the states. Daniels recognizes that this argument was rejected by the Ninth Circuit in *Vongxay*, but he contends that his claim should be reviewed under intermediate review, whereas *Vongxay* applied rational basis review. Dkt. No. 68 at 16 n.12.

Daniels does not cite any authority in support of his argument that § 922(g)(1) violates the Equal Protection Clause and I am not aware of any court that has found that it does. On the contrary, several courts have denied Equal Protection challenges to § 922(g)(1), even under intermediate scrutiny, which Daniels contends applies here. *See, e.g., United States v. Jones*, 673 F. Supp. 2d 1347, 1355 (N.D. Ga. 2009) (applying intermediate scrutiny and rejecting argument that § 922(g)(1) violates the equal protection clause because it inconsistently restores the right to bear arms by incorporating varying state restoration schemes); *United States v. Moore*, 2009 WL

16

1033363, at *4 (W.D.N.C. Apr. 17, 2009) ("§ 922(g)(1) withstands intermediate scrutiny and therefore is not unconstitutional under the Equal Protection Clause") *aff'd,* 666 F.3d 313 (4th Cir. 2012); *Williams*, 616 F.3d at 694 (summarily rejecting equal protection challenge to § 922(g)(1), noting that "the statute tolerates different outcomes for persons convicted in different states, but this is true of all situations in which a firearms disability ... depends on state law") (citation omitted); *United States v. Schultz*, 2009 WL 35225, at *5 (N.D. Ind. Jan. 5, 2009).  In any event, for the reasons stated above, I find that § 922(g)(1) satisfies intermediate scrutiny as applied to Daniels and therefore does not violate the Equal Protection Clause.  Daniels's motion to dismiss the indictment on the basis that § 922(g)(1) violates the Equal Protection Clause is DENIED.

### III.   TENTH AMENDMENT CHALLENGE

The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."  U.S. Const. amend. X.  Daniels argues that § 922(g)(1) violates the Tenth Amendment because it regulates a person's purely intrastate possession of firearms, which is not a power delegated to the United States.  The Ninth Circuit has soundly rejected this argument, stating that "[b]ecause [§ 922(g)(1)] is a valid exercise of Congress' commerce authority, we conclude that the statute does not violate the Tenth Amendment."  *United States v. Collins*, 61 F.3d 1379, 1384 (9th Cir. 1995); *see also United States v. Duckett*, 406 F. App'x 185, 186-87 (9th Cir. 2010) ("Section 922(g)(1) permissibly regulates felons' possession of firearms by virtue of the commerce clause without violating the Tenth Amendment.") (citing *Collins,* 61 F.3d at 1383-84).  Accordingly, Daniels's motion to dismiss the indictment on the basis that § 922(g)(1) violates the 10th Amendment is DENIED.

### CONCLUSION

Daniels's motion to dismiss the indictment is DENIED.  Dkt. No. 68.

**IT IS SO ORDERED**.

Dated: April 16, 2015

_____
WILLIAM H. ORRICK
United States District Judge